Nov. Term,
1861.

CONNER and Others *v.* COMSTOCK and Others.

CONNER
*v.*
COMSTOCK.

It is not necessary that the answer of the defendant in replevin should claim a return of the property; but if the case made by the evidence, authorizes a return, it may be awarded by the Court, after verdict.

A judgment of return can not be awarded, where the evidence fails to show that the property was delivered to the plaintiff in replevin, or, where there has been a failure to assess the value of the property.

*A.* and *B.* entered into a written contract, whereby the former agreed to purchase of the latter a stock of merchandise, then in store, at the cost price thereof. *A.* was to take up certain notes given by *B.* to divers persons, at a rate not exceeding what the stock would pay if distributed among them and *A.*, according to the amount of their several claims against *B.*; or, if such an arrangement could not be made with the creditors, then *A.* was to give *B.* his note, for such an amount as would have been coming to the creditors if they had accepted the arrangement. Possession of the goods was given to *A.*, the day following the execution of the agreement.

*Held*, that the contract was not an agreement to sell, merely, but an actual sale, upon a consideration to be performed at a future day.

An action of replevin will not lie to recover the possession of goods from one who has purchased them in good faith, of a wrong doer, without a previous demand by the true owner.

*Wednesday,*
*November* 27.

APPEAL from the *Marion* Circuit Court.

DAVISON, J.—This was an action of replevin, by the appellants, who were the plaintiffs, against the appellees, to recover certain store goods, consisting of boots and shoes. The complaint is in the form prescribed by the statute, charging possession without right, and unlawful detention, &c. Defendants answered by two paragraphs: 1. The property was not in the plaintiffs. 2. That it belonged to the defendants, " *W. H. Comstock & Co.*" Upon these defenses, issues were made and submitted to the Court, who found that the defendants did not unlawfully take, or detain, the property; that the same be returned to the defendants; and that they had sustained damage to the amount of one dollar. Judgment was rendered in accordance with the finding of the Court. At the proper time, the plaintiffs moved for a new trial, on the ground that " the decision was not sustained by the evidence, and was contrary to law." But the motion was overruled, and they excepted.

The evidence given on the trial is, substantially, as follows: On *January* 20, 1858, the plaintiffs, and *James Serrin*, entered into a written contract, whereby the plaintiffs agreed to purchase said *Serrin's* stock of boots and shoes, then in his store room in *Indianapolis;* the same being then held by the sheriff, by virtue of a writ of attachment sued out by these plaintiffs, which was then pending in the *Marion Circuit Court.* Plaintiffs agreed to take the property at the price it cost *Serrin*, its value to be ascertained by reference to an appraisement made by the sheriff, when he levied the attachment. They also agreed to take up certain notes made by *Serrin* to *W. H. Comstock & Co.*, and *Benedict, Hall & Co.*, at a rate not exceeding what the same stock would pay at its value as above, if distributed among them and the plaintiffs, on account of *Serrin's* indebtedness to said plaintiffs; and they, the plaintiffs, were to deliver up to *Serrin* the notes held by *Comstock & Co.*, and *Benedict, Hall & Co.*, and the amount it cost them was to be deducted from the value of the goods, as above ascertained; and for their value remaining after such deduction, the plaintiffs agreed to deliver to *Serrin* double the amount of the notes held by them, against him. It was further agreed, that if the plaintiffs could not make an arrangement, immediately, with *Comstock & Co.*, they were to execute their notes to *Serrin* for an amount equal to what they, *Comstock & Co.*, would have received under such arrangement; and it was further agreed that said attachment suit be dismissed, each party paying half the costs, &c.

This contract, as has been seen, was made *July* 20, 1858, and the proof is, that it was executed at 11 o'clock of that day. The goods sold to the plaintiffs, those which were in the custody of the sheriff upon the attachment, and those now in suit, are the same goods. The plaintiffs were to get the key of the store room in which the goods were situate, and take possession of them next morning. A written instrument, directing the dismissal of the attachment suit, was delivered to the clerk of said Court on the day of sale, and that suit was accordingly dismissed. In the morning after the sale, the plaintiffs called on the sheriff for the key of the

*Nov. Term,*
*1861.*

CONNER
v.
COMSTOCK.

store room, when they met *Serrin*, who informed them, that after the sale to them, he had sold the same goods to *W. H. Comstock & Co.* This sale appears to have been made in the evening of the same day on which the plaintiffs contracted with *Serrin.* It was also witnessed by a written contract between him and *Comstock & Co.*, which stipulated, in substance, that he, *Serrin*, had, at that date, sold the goods to *Comstock & Co.*, at their fair cost value; the price to be fixed by two appraisers, to be chosen by the parties; when appraised, *Comstock & Co.* were to retain out of the same, the amount of ·their note against *Serrin*, calling for $468, also to pay *Benedict, Hall & Co.*, $444, and *W. H. McDonald*, $450, and pay the balance to *Serrin;* but they were not to be liable to pay his indebtedness, or pay any overplus to him, until the money was realized from the sale of the goods. They were, however, to use reasonable diligence to make such sale, reserving the right 'to sell on a reasonable credit, taking the notes of the purchasers for the overplus, after the above named debts were paid.

*McNaught*, a witness for the defense, testified that *Henderson*, the agent of *Comstock & Co.*, gave him the key of the store room, and employed him to sell the goods; the key was given to him in the morning, next after the sale to *Comstock & Co.* He had been in the store about an hour, when the sheriff took the goods, by virtue of the writ of replevin issued in this suit.

*Henderson*, the agent, testified that the contract between *Serrin* and *Comstock & Co.*, was made in witness' office, about 7 o'clock of the evening of *January* 20, 1858; that he had no notice of the sale to *Conner, Burton & Worman*, the plaintiffs; on the contrary, he was informed there had been no sale; heard there had been some negotiations, but was informed that no sale had been consummated. Attachment proceedings were then pending in the *Marion* Circuit Court, in favor of *Comstock & Co.*, which, on the same evening, after the sale, were ordered by witness to be dismissed.

This judgment, so far as it awards a return of the property, is said to be erroneous, because the defendants, in their pleading, did not claim a return. This position seems to be

untenable. If the case made by the evidence authorizes a

return, it may, after verdict, be awarded by the Court, on motion of the defendant. *Plant* v. *Crane*, 7 Ind. 486. There is, however, another ground upon which the action of the Court, in awarding the return, must be held objectionable, viz., the evidence fails to show that the goods were delivered to the plaintiffs. The only witness who testifies on the point of delivery, is *McNaught*, and he simply states that "he had been in the store about an hour, when the sheriff took the goods, by virtue of a writ issued in this case." Now, this may prove that the sheriff seized the property, but falls short of proving it in possession of the plaintiffs. The sheriff, before he delivers the property seized to a replevin plaintiff, is required by the statute "to take from him a written undertaking, payable to the defendant, &c., to the effect that he will prosecute his action with effect, and without delay, &c.; which undertaking shall be delivered to the sheriff within twenty-four hours after seizing the property; and in default thereof, it shall be returned to the defendant." 2 R. S., § 132, p. 57. For aught that appears in the record, the goods, in this instance, may have been so returned. At all events, there is no evidence tending to prove that they were ever in the possession of the plaintiffs; and the result is, the judgment awarding a return must be held erroneous. Again, the value of the property does not appear to have been assessed, and for that reason, a return should not have been awarded. *Tardy* v. *Howard*, 12 Ind. 404. The property never having been detained by the plaintiffs, the judgment for damages is not maintainable.

The remaining inquiry relates to the sufficiency of the evidence to sustain the finding of the Court. It is argued, that the sale to the plaintiffs vested the property in them, without any formal delivery, because it was by contract in writing, "signed by the party to be charged," &c. 1 R. S., § 7, p. 301. While, on the other hand, it is insisted that the contract was a mere agreement to sell, and shows that certain things were to be done by the plaintiffs, before their purchase was complete. The latter position, it seems to us,

Nov. Term, 1861.

CONNER
v.
COMSTOCK.

is incorrect. The purposes of the contract at once show, that it was intended by the parties, not as an agreement to sell, merely, but as an actual sale, upon a consideration to be performed at a future day. The subject of the sale is sufficiently described; its price is fixed by reference to a definite standard, and the mode of payment is plainly stipulated. And, beside this, there was a *memorandum in writing* of the contract of sale, which, under the statute of frauds, was alone, in this instance, sufficient to invest the plaintiffs, not only with the title to the property, but also the right of possession. The result is, *Serrin*, the vendor, having by the sale to the plaintiffs divested himself of all right of property in the goods, could not by his subsequent sale to *Comstock & Co.*, pass to them a valid title; because, having no title, he could confer none. 1 Parsons on Cont. 240; 1 Smith's Lead. Cases, 258; 11 Wend. 80; 2 Parsons, 336, *et seq.*

But the appellees assume this ground: they say, although *Comstock & Co.* may not have a perfect title to the property, still, they purchased without notice of the contract under which the plaintiffs claim; that so far as they had concern in the transaction, the sale to them was *bona fide*, and having, in virtue of it, acquired possession of the goods, they are not liable to be sued, until after a demand of the property, and a refusal to deliver it to the true owner. This objection to the sufficiency of the evidence, is well taken. *Wood* v. *Cohen*, 6 Ind. 455, decides, "That the owner of a chattel can not maintain an action to recover the possession, against one who has purchased it from a wrongful taker, until he has made a demand for its return." See, also, *Barrett* v. *Warren*, 3 Hill, 348; *Pringle* v. *Phillips*, 5 Sandf. 157. The principle involved in these decisions, obviously applies to the case at bar. Here, the evidence proves the purchase of *Comstock & Co.* to have been made in good faith; and no demand having been made of them for the delivery of the goods, prior to the institution of the suit, the action can not be maintained.

*Per Curiam.*—The judgment, so far as it awards a return of the property, and damages for the detention, &c., is

reversed; in all else, the judgment is affirmed, with costs, in this Court, against the appellees.

*N. B. Taylor*, for the appellants.